UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JERRY L. GATES, | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) No.: 18-cv-4142-JBM |
| | ) |
| LYNNE SHELTON, et al., | ) |
| | ) |
| **Defendants.** | ) |

## **MERIT REVIEW – SECOND AMENDED COMPLIANT**

Plaintiff, proceeding *pro se,* and detained at the Rushville Treatment and Detention Center, was granted leave to file a second amended complaint and to proceed *in forma pauperis* ("IFP") under 28 U.S.C. §1915 (a)(1). Section 1915 (a)(1) "is designed to ensure indigent litigants meaningful access to the federal courts." *Christophel v. Brandl,* No. 08-755, 2008 WL 5429658, at *1 (E.D. Wis. Dec. 31, 2008) citing *Neitzke v. Williams,* 490 U.S. 319, 327 (1989). A court must, however, dismiss cases proceeding *in forma pauperis* "at any time" if the action is frivolous, malicious, or fails to state a claim, even if part of the filing fee has been paid. The Court has determined that Plaintiff's allegations of poverty are true and now reviews the complaint to determine whether it is frivolous, fails to state a claim, or seeks monetary relief against a defendant immune from suit. 28 U.S.C. §1915(e)(2).

When reviewing the second amended complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "'state a claim for relief that is plausible on its face.'" *Alexander v. U.S.*, 721 F.3d 418, 422 (7th Cir. 2013) (quoted cite omitted).

Plaintiff is civilly detained in the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Commitment Act, 725 ILCS 207/1, *et seq*. Plaintiff's identified religion is New Orleans Voodoo Hoodoo and he believes he is the only such adherent at Rushville. Plaintiff has filed a muddled complaint against 12 Defendants in which he complains of being double-celled, though it is not clear whether he asserts this only in support of his First Amendment, Religious Land Use and Institutionalized Person Act (RLUIPA), and state-law Intentional Infliction of Emotional Distress ("IIED") claims, or whether this is asserted as an independent inhumane condition of confinement.

Plaintiff asserts that Rushville has a policy in response to space limitations, under which residents must share rooms. Plaintiff asserts that the cells at Rushville were originally intended for a single occupant and are 12' x 7' x 12' in dimension, with a sink and toilet unit and a four-drawer. He alleges that while cells are usually shared, some exceptions are made in the case of residents who are aggressive and who sexually act out. In addition, some residents are single celled by request, and others by Court order.

On September 6, 2016, Plaintiff submitted a Room Change Request, requesting a single room as, if he were to share a room with another, he would have to take down his altar several times a day. Plaintiff does not indicate the size of his altar or where it is located in the cell or explain why it could not remain in place. On October 18, 2016, his request was denied with the finding that removing and replacing the altar did not warrant placement in a single cell. It was recommended that Plaintiff seek a cellmate who was gone most of the day, either in assigned tasks or group meetings.

On January 19, 2017, Plaintiff submitted a request to the Religious Committee, requesting a single cell in furtherance of his religious practice, the particulars of the practice not

explained. The request was denied on February 2, 2017. Plaintiff thereafter submitted a request to the Facility Director, the Clinical Director, and the Secretary of the Department of Human Services without result. Plaintiff also filed an emergency grievance, asserting that his cellmate was acting in an intimidating manner, not otherwise specified, and that this was inhibiting his religious practice.

On April 7, 2017, Plaintiff filed a housing request, asking that his roommate be moved and replaced with someone who understood his religious beliefs and practices. The request went to the Housing Committee which approved it on April 12, 2017. On April 19, 2017, Plaintiff's new roommate moved in. For unexplained reasons, this roommate was moved out several months later.

Plaintiff pled that he enjoyed being by himself and things were going well but, despite this, he was assigned another roommate. Plaintiff indicates that he had negative issues with this roommate which "almost came to a fight situation." Plaintiff filed an emergency grievance and the allegedly troublesome roommate was removed. Plaintiff indicates that the next roommate "was a good one."

While Plaintiff claims his religious freedoms were infringed, he pleads sparse facts in support. He indicated that he would have to relocate his altar several times a day. He also claims that, at Rushville, there are limitations placed on his possessing books, oils and "ritual things," not otherwise identified. He alleges, generally, that Defendants have violated his religious freedoms and "have failed to offer or help Plaintiff with some sort of relief or resolve of any kind."

Plaintiff wants his own cell and claims that he knows of 48 cells which are not used, though confusingly claiming that there are residents in some of them. He alleges, further, that

3

not all of these cells have electricity or cable. Plaintiff requests declaratory and injunctive relief. The requested injunctive relief is in the form of an order preventing the largely unspecified actions by Defendants, and an order placing him in a single cell, with power and cable, which is to be near the area where he participates in group treatment.

**ANALYSIS**

Individuals in custody have a First Amendment right to reasonable opportunities to practice their religion, subject to the legitimate penological concerns of the prison. *Maddox v. Love*, 655 F.3d 709 (7th Cir. 2011); *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). The Free Exercise Clause of the First Amendment prohibits the government from imposing a "substantial burden" on a "central religious belief or practice." *Isby-Israel v. Lemmon*, No. 13-172, 2016 WL 3072177, at *4 (S.D. Ind. June 1, 2016) (internal quotation omitted). In addition, under RLUIPA, officials may not substantially burden a detainee's religious exercise unless there is a compelling government interest at stake. If such an interest exists, prison officials must use the least restrictive means of achieving it. 42 U.S.C. § 2000cc-1(a).

Here, Plaintiff fails to identify either an inability to practice, or a substantial burden on his religious exercise. "[A] substantial burden on the free exercise of religion ... is one that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs." *Isby-Israel*, 2016 WL 3072177, at *4 quoting *Koger v. Bryan,* 523 F.3d 789, 798-99 (7th Cir. 2008).

Plaintiff does not provide specific information as to how his religious freedoms have been infringed and falls woefully short of pleading a First Amendment or RLUIPA claim. *See Korte v. Sebelius*, 735 F.3d 654, 671 (7th Cir. 2013) (governmental action burdens religious

4

exercise if it "bears direct, primary, and fundamental responsibility for rendering a religious exercise…effectively impracticable. ") citing *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir. 2003). Plaintiff's claim that he must move his altar several times a day, and that there are restrictions as to the number of religious articles he may possess, fail to establish that he has effectively been prevented from practicing his religion.

It is not clear whether Plaintiff asserts that the double-celling is merely a factor which has inhibited his religious practice or whether it is also asserted as an inhumane condition of confinement. If it goes only to religious practice, the allegation is insufficient to state a claim, as discussed. If it is asserted as an independent condition of confinement claim, it also fails. To prevail on such a claim, Plaintiff as a detainee, must make an objective showing that the conditions were sufficiently serious and a that Defendants acted with deliberate indifference in response to the conditions. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To violate the constitution, the conditions must amount to extreme deprivation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Conditions which are "restrictive and even harsh" do not reach this standard. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981) and must be of a type which "pose a substantial risk to inmate health or safety." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017).

Overcrowding, by itself, does not violate the Constitution. *Chairs v. Watson*, 2013 WL 2147451, at *1 (S.D.Ill. May 15, 2013) citing *Hubbard v. Taylor,* 538 F.3d 229 (3d Cir. 2008) (triple-celling of pretrial detainees in single-man cells was rationally related to managing overcrowded prison). This is so, even in cases where a detainee was required to sleep on a mattress on the floor for three to seven months. *Id*. at 235. There, the court found that, while the plaintiff detainee slept on floor at night, he had access during the day, to 3,900 square feet of

5

dayrooms. This appears analogous to the situation at Rushville where civil detainees are not confined to their cells but may pursue assigned tasks and participate in group activity.

Plaintiff also alleges a state law claim of Intentional Infliction of Emotional Distress ("IIED"). "Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant intentionally or recklessly engaged in 'extreme and outrageous conduct' that resulted in severe emotional distress." *Dent v. Nally*, No. 16-00442, 2016 WL 2865998, at *4 (S.D. Ill. May 17, 2016) (internal citations omitted). "[E]motional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be severe...unendurable by a reasonable person…" *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (internal citations omitted). "Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Id*. at 1030. Plaintiff does not plead a sufficient showing here and the IIED claim is also DISMISSED.

**IT IS THEREFORE ORDERED:**

1. Plaintiff's second amended complaint is DISMISSED for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiff will have a final opportunity, within 30 days, in which to replead his claims. The pleading is to be captioned Third Amended Complaint and is to include all of Plaintiff's claims without reference to a prior pleading. Failure to file an amended complaint will result in the dismissal of this case, without prejudice, for failure to state a claim.

2. Plaintiff's Motion for Status [20] is rendered MOOT.

 10/15/2019                           s/Joe Billy McDade
ENTERED                              JOE BILLY McDADE
                                     UNITED STATES DISTRICT JUDGE